[Crim. No. 6800.    In Bank.    July 24, 1961.]

THE PEOPLE, Plaintiff and Respondent, v. JOSE ANGEL GONZALEZ, Defendant and Appellant.

George W. Hooten for Defendant and Appellant.

Stanley Mosk, Attorney General, and Norman H. Sokolow, Deputy Attorney General, for Plaintiff and Respondent.

GIBSON, C. J.—Defendant was indicted for the murder of Juanita Zepeda. He entered pleas of not guilty and not guilty by reason of insanity but withdrew them and pleaded guilty to murder in the first degree. Upon a trial by jury on the sole issue of penalty, his punishment was fixed at death. His motion for a new trial was denied, and the appeal comes to us automatically under subdivision (b) of section 1239 of the Penal Code.

Juanita Zepeda, who was 10 years old, was in bed asleep when her family left for work in the early morning of August 29, 1960. There was evidence that she was then wearing a blouse, a slip and panties. When her mother came home in the afternoon, Juanita had disappeared. The bedspread and the upper sheet on her bed were missing, and the lower sheet was disarranged. A metal box which contained money and was kept under her bed was also gone. On the following day, the girl's body was discovered buried in the yard of her home. The blouse and the slip were still on the body, but the panties were not. A doctor who performed an autopsy found six wounds produced by blows on the head, neck and shoulders, but in his opinion the wounds, while bringing about unconsciousness, were not the cause of death, and the girl was alive when buried and died of asphyxiation. The doctor testified that decomposition had started quickly due to the hot weather and the shallowness of the grave and that he was unable to determine whether Juanita had been sexually molested. The missing bedspread, sheet and panties were never found.

Upon being interrogated by the police, defendant confessed to having killed Juanita and showed them where he had buried the metal box and hidden some of the money it contained. His version of what occurred, as related to the police and in his testimony at the trial, was that he went to the Zepeda home about 9 or 9:30 on the morning in question to take money which he had heard was kept there. Juanita, who was awake in the living room, told him that her parents were not at home, and he went outside and was about to leave when "something came into [his] mind." He reentered and struck Juanita with his hand, then went into the yard, picked up a gate hinge, and, returning to the living room, struck her twice on the head. Defendant stated that he thought of taking her to a doctor but decided she was dead and buried her. Then he went into the bedroom where he knew the money was kept, took the metal box, and left. According to defendant, he did not molest Juanita or take the bedspread

or the sheet. He said that he did not remove her panties and noticed she was not wearing any when he picked her up and carried her outside.

The record contains only scant evidence with respect to defendant's background. The showing made by the prosecution relates almost entirely to the circumstances surrounding the crime, and this is also true of the testimony of defendant, who was the sole witness for the defense. There is evidence that at the time of the killing defendant was a married man 27 years of age, and the father of three small children. He was doing gardening work and was considered by his employer to be an excellent and dependable worker. As far as appears, he had not previously committed a crime or been in any difficulty with the police. Neither side introduced psychiatric testimony regarding his mental condition.

Defendant complains of the fact that at the conclusion of the evidence the prosecution was not limited to one opportunity to address the jury but was permitted to argue the case both before and after the defense made its argument. This, of course, is the procedure customarily followed in trials on the issue of guilt, and we have recently held that it is also proper procedure where, as here, the issue of penalty is being tried. (*People* v. *Corwin*, 52 Cal.2d 404, 407 [340 P.2d 626].)

It is further contended that the prosecuting attorney was guilty of prejudicial misconduct in arguing the case to the jury. At one point he remarked that he did not like to talk about "these sex perversion cases" in front of juries. No objection was made by defendant. The prosecutor subsequently stated that all killings which occur during the commission of robbery, rape, mayhem, and "sex perversion" are murders in the first degree. Defendant objected on the ground that the prosecutor, without justification in the evidence, was implying that there had been sexual perversion. The prosecutor replied that he was merely stating the law and was not drawing any inferences. The court agreed that the statement was no more than one of law and told the jurors that they would not have to consider whether the murder was in the first degree. Under the circumstances it seems unlikely that the statement objected to was understood as a comment on the evidence. Even if it be assumed that the statement was so understood and that the phrase "sex perversion" was not appropriate terminology under the showing made, the evidence permits an inference that a sexual motive was involved, and,

in the light of the entire record, we cannot say that defendant was prejudiced.

The judgment and the order denying a new trial are affirmed.

Traynor, J., Schauer, J., McComb, J., Peters, J., White, J., and Dooling, J., concurred.